UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

RALPH MONTANO and
ELSIE M. MONTANO,

     Debtors.

Case No. 7-04-17866-TL

RALPH MONTANO and
ELSIE M. MONTANO, et al.,

     Plaintiffs,

v.

Adv. No. 07-1026

FIRST LIGHT FEDERAL CREDIT UNION,

     Defendant.

## MEMORANDUM OPINION

### I. INTRODUCTION

This opinion addresses the legal standards and the current state of the record on Plaintiffs' allegation that Defendant violated the discharge injunction of 11 U.S.C. § 524(a)(2)[1] in more than 1,500 cases over a 10-year period by improper credit reporting and related acts. Plaintiffs, as class representatives in this class action suit, seek unspecified compensatory damages and $10,000,000 in punitive damages.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment, filed October 1, 2010, doc. 103, and supporting memorandum, doc. 104 (together, the "Motion");[2] Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment,

---

[1] 11 U.S.C. § 524 provides in pertinent part:
    (a) A discharge in a case under this title—
        (2) operates as an injunction against . . . an act to collect, recover or offset any . . . debt . . . .
[2] In this opinion, page citations to the Motion are to the 46-page supporting memorandum rather than the 2-page motion.

filed October 1, 2010, doc. 108 (the "Response"); Plaintiffs' Reply Brief in support of the Motion, filed November 29, 2010, doc. 111 (the "Reply"), and the evidence the parties proffered in support of and in opposition to the Motion.

This is a core matter. The Court has considered the briefs and supporting papers of the parties, and has made an independent inquiry into applicable case law. Being sufficiently advised, the Court hereby issues the following Memorandum Opinion. For the reasons set forth below, the Motion is denied.

## II. FACTS

By the Motion, Plaintiffs seek summary judgment that Defendant is liable to all members of both classes for violating the discharge injunction, reserving damages issues for later hearing.[3] Motion, p. 1.

The documents submitted to the Court in support of and in opposition to the Motion are voluminous. In support of the Motion Plaintiffs submitted about 530 pages of deposition testimony and documents. Defendant's Response is 43 pages and attached 127 pages of record. Finally, Plaintiffs' Reply is 27 pages, to which a 39 page supplemental appendix is attached.

Plaintiffs alleged 67 material facts that are not in genuine dispute. Supporting the Plaintiffs' Motion are portions of four depositions, four affidavits, and hundreds of pages of documents, mostly policy and procedures manuals of Defendant, lists of members of the Plaintiff credit union who had filed a bankruptcy case, and copies of credit reports. Defendant disputed, in whole or in part, 23 of the 67 alleged facts, and objected to 17 others. In support of its Response, Defendant submitted portions of eight deposition transcripts, several affidavits, and a

---

[3] Plaintiffs' request certain relief in the Motion, i.e. entry of an injunction and specified restitution damages. Motion, p. 41. This request will be deferred until trial.

-2-

number of other documents. Finally, attached to the Reply are portions of four deposition transcripts and answers to interrogatories.

Defendant's objections to Plaintiffs' statement of facts likely are not all sustainable, but none are frivolous. Likewise, Defendant's attempts to controvert Plaintiffs' asserted facts do not, in every case, raise a fact issue, but the evidence offered in opposition is legitimate and substantial.

Based on the current record. there likely is no genuine dispute that:

- at least in certain instances, and perhaps much of the time, Defendant did not update its credit reporting to indicate that a discharge was entered in the bankruptcy case of a debtor/member;[4]

- at least in certain instances, and perhaps in most instances, Defendant continued to report discharged debts as still due;[5]

- In some instances Defendant reported the discharge to the credit reporting agency but the agency did not change its credit report in response, for reasons that have nothing to do with Defendant;[6] and

- In some instances members of Defendant's credit department did not know when a debtor's discharge was entered, because of software and/or other communication problems within Defendant.[7]

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4] See Motion, pp. 11-12, alleged facts 27-29.
[5] See Motion, p. 13, alleged fact 35.
[6] See Response, p. 4 (testimony of Martha Loya).
[7] Motion, p. 8, alleged fact 18; Response, pp. 3-4.

-3-

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides:  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d (1986).  In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment.  *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).  *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  A mere "scintilla" of evidence will not avoid summary judgment.  *Vitkus,* 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact finder could reasonably find

for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

IV.     APPLICABLE LAW ON § 524(a)(2)

1.     No Private Right of Action.  There is no controlling Tenth Circuit authority addressing whether debtors injured by a violation of 11 U.S.C. §524(a)(2) have a private right of action for damages.  Other circuits addressing the issue have held that no such private right of action exists. *See Walls v. Wells Fargo Bank,* 276 F.3d 502, 508 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001). *See also Bessette v. Avco Financial Services*, 230 F.3d 439, 444 (1st Cir. 2000).

In *In re Paul*, 534 F.3d 1303 (10th Cir. 2008), the Tenth Circuit cited *Walls*, *Bessette*, and *Cox* when discussing a bankruptcy court's power to enforce and remedy violations of § 524(a)(2) by sanctioning creditors pursuant to the court's contempt powers.  534 F.3d at 1306-07.  The implication in *Paul* is that the Tenth Circuit likely would follow the 1st, 6th, 7th, and 9th Circuits in holding that there is no private right of action.  Based on *Paul* and the other case law, the Court holds that § 524(a)(2) does not confer a private right of action upon debtors in cases of violation of the discharge injunction.

2.     The Appropriate Remedy is a Contempt Order.  The lack of a private right of

action does not leave debtors without a remedy. The Tenth Circuit has made clear that a debtor may file a motion to sanction a creditor for violating § 524(a)(2), pursuant to the Court's civil contempt powers derived from 11 U.S.C. § 105. *Paul*, 534 F.2d at 1306-07. This is the generally recognized remedy. *See Bessette*, 230 F.3d at 445 (citing lower court cases); *Walls*, 276 F.3d at 509; and *Cox*, 239 F.3d at 917. *Cf. Pertuso*, 233 F.3d at 423. The Court will apply the *Paul* holding here.

3. <u>Objective Standard for Violations of the Discharge Injunction</u>. The controlling case law in this circuit is that an "objective" standard" is used to determine whether an act violates the discharge injunction. In *Paul*, 534 F.3d at 1308, the 10th Circuit held that "the inquiry is objective; the question is whether the creditor's conduct has the practical, concrete effect of coercing payment of discharged debt, and bad faith is not required." *See also In re Ammons*, 2012 WL 1252621, * (Bankr. D.N.M. 2012) *8, citing *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006), and *In re Schlichtmann*, 375 B.R. 41, 95-97 (Bankr. D. Mass. 2007); *In re Mahoney*, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007).

4. <u>The Relevance of Intent</u>. Cases in other jurisdictions have considered the creditor's purpose in taking allegedly improper actions. *See e.g. Russell*, 378 B.R. 735, 742 (Bankr. E.D.N.Y. 2007) (reporting a debt can violate the discharge injunction if done for the specific purpose of coercing payment); *In re Irby*, 337 B.R. 293, 296 (Bankr. N. D. Ohio 2005) (injunction violated if action of reporting a debt was undertaken for the specific purpose of coercing payment); *In re Lohmeyer*, 365 B.R. 746, 750 (Bankr. N.D. Ohio 2007) (quoting *Irby*); *Mahoney,* 368 B.R. at 584 (reporting could violate discharge injunction if a linkage is shown to collection of discharged debt).

Even in jurisdictions where an objective standard is used to determine whether a

creditor's actions violated the discharge injunction, the intent of the creditor can be relevant, because the relief available to debtors is contempt sanctions, and courts generally are reluctant to sanction conduct unless it was willful or in taken in bad faith. *See In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (court has power to sanction bad faith conduct); *In re Aspen Limousine Service, Inc.*, 198 B.R. 341, 350 (D. Colo. 1996) (contempt is available as a remedy for misconduct); *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (contempt is an available remedy where debtor shows that the creditor had knowledge of the discharge and willfully violated it); *Russell*, 378 B.R. at 744 (quoting *Torres*); *In re John Richard Homes Building Co., LLC*, 475 B.R. 585, 592 (E.D. Mich. 2012) (contempt sanctions justified when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"), citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Mahoney*, 368 B.R. at 590 (in civil contempt proceedings, the movant must show a knowing violation of a court order). A creditor's innocent action, even if it technically violated the discharge injunction, might not merit contempt sanctions.

    5.    <u>Application of the Discharge Injunction to Post-Discharge Credit Reporting</u>. Courts addressing the issue have held uniformly that a debt is not extinguished by entry of the bankruptcy discharge, but rather that a creditor is enjoined from attempting to collect the debt *in personan*. *See In re Vogt*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) (discharge does not wipe away the debt, it only serves to eliminate the debtor's personal responsibility to pay the debt); *In re Irby*, 337 B.R. at 295 (upon discharge, it is only a debtor's personal obligation to pay the debt that is effectively extinguished; the debt itself remains); *In re Mahoney*, 368 B.R. at 584 (bankruptcy does not erase debt; the discharge is only an injunction against attempts to collect the debt as a personal liability of the debtor); *In re Mogg*, 2007 WL 2608501, *4 (Bankr. S.D. Ill.

-7-

Case 07-01026-t    Doc 151    Filed 11/02/12    Entered 11/02/12 08:57:15 Page 7 of 10

2007) (nothing in § 524 expunges or extinguishes discharged debts—they simply may not be enforced as a personal liability of the debtor); *In re Bruno*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006). *See generally Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66 (1991) ("a chapter 7 discharge extinguishes only "the personal liability of the debtor").

As a corollary, most courts have held that that a creditor's post-discharge act of reporting a debt as due, without more, is not a violation of the discharge injunction. *See e.g. In re Mahoney*, 368 B.R. at 584 ("mere reporting of credit information about a debtor *vel non* is not an "act" to collect a discharged debt . . . .") *In re Irby*, 337 B.R. at 295 (sole act of reporting a debt does not violate discharge the injunction); *In re Vogt,* 257 B.R. at 70 (debtor's reporting of debt as still due, standing alone, does not violate the discharge injunction); *In re Small*, 2011 WL 1868839, *4 (Bankr. E.D. Ky. 2011); *In re Mogg*, 2007 WL 2608501, *4; *In re Bruno*, 356 B.R. at 92-93.[8]

6. <u>Credit Reporting Combined with Other Acts Could Violate § 524(a)(2).</u> On the other hand, it is clear that a creditor can violate the discharge injunction by credit reporting, if the creditor's credit reporting and/or other acts are done to collect a discharged debt and/or violate the "objective test." *See Mahoney*, 368 B.R. at 584 (violation could occur if there is linkage between credit reporting and debt collection); *In re Russell*, 378 B.R. at 742 (reporting of debt could violate § 524(a)(2) if undertaken for the specific purpose of coercing payment); *In re Torres*, 367 B.R. at 486 (discharge injunction would be violated if credit reporting was done for the purpose of collecting discharged debt); *In re Ammons*, 2012 WL 1252621, *8 (facially permissible action could violate the discharge injunction if taken to coerce or harass the debtor

---

[8] A related issue is whether a creditor's failure to update a credit report can be "an act." See *Bruno,* 356 B.R. at 92-93; *In re Mogg*, 2007 WL 2608501.

-8-

improperly).

V.      DISCUSSION

The evidence whether, using the objective standard, Defendant's conduct violated the discharge injunction is inconclusive and conflicting. Furthermore, there is little or no evidence why Defendant took the credit reporting actions it did. If the evidence at trial convinced the Court that Defendant's actions had the effect of coercing payment of the discharged debts, then the Court likely would find a violation of the discharge injunction under the objective standard. Similarly, if such evidence convinced the Court that Defendant's actions both violated the discharge injunction and taken were taken willfully, then the Court likely would sanction Defendant. The inverse is true for both issues.

Furthermore, this is a class action. The current record does not establish that Defendant's treatment of all class members was uniform. Rather, it appears that Defendant's actions varied— for example, some class members' debts were reported as discharged, while others were not. The Court will need to hear evidence about which class members, if any, were subjected to prohibited collection activities. Furthermore, if some members were subjected to willful actions while others were not, that evidence would need to be developed also.

This is a significant class action, with a punitive damages prayer of $10,000,000. The voluminous evidence is conflicting and unclear on the points outlined above. Given the genuine disputes about material facts, the claims asserted in the adversary proceeding cannot be disposed of on summary judgment.

VI.     CONCLUSION

The Motion will be denied. By denying the Motion, the Court is not ruling on the merits of any claim or defense. This Memorandum Opinion shall constitute the Court's findings of fact

and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate order will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on docket: November 2, 2012

Copies to:

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004-1479

Kelly Albers
650 Montana Ave., Ste. D
Las Cruces, NM 88001-4294

Dennis E. Jontz
201 Third St., NW, Suite 1950
Albuquerque, NM 87102