UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RALPH MONTANO and
ELSIE M. MONTANO,

                                   Case No. 7-04-17866-TL

      Debtors.

RALPH MONTANO and
ELSIE M. MONTANO, et al.,

      Plaintiffs,

v.                                      Adv. No. 07-1026

FIRST LIGHT FEDERAL CREDIT UNION,

      Defendant.

**<u>MEMORANDUM OPINION</u>**

## I.    <u>INTRODUCTION</u>

Plaintiffs allege in this class action that Defendant violated the discharge injunction[1] granted in about 1600 New Mexico bankruptcy cases by failing to update credit reports to reflect bankruptcy discharges, instead continuing to report the debts as past due. Plaintiffs seek declaratory and injunctive relief (Class 1) and compensatory and punitive damages (Class 2). The classes were certified in October, 2008.[2] Defendant has now moved to decertify the classes.[3] Pursuant to Rule 23(c)(1)(C),[4] it is appropriate to revisit the class certification issue.

---

[1] 11 U.S.C. § 524(a)(2).
[2] Order Certifying Class, entered October 15, 2008, doc. 40 (the "Certification Order").
[3] Motion to Decertify Class Actions, filed December 21, 2012, doc. 161 (the "Motion"). Plaintiffs responded January 21, 2013, doc. 162 (the "Response"). Defendant replied February 4, 2013, doc. 163 (the "Reply").
[4] Citations to a "Rule" are to Federal Rule of Civil Procedure 23, made applicable in this adversary proceeding by Bankruptcy Rule 7023.

Because of the changes in the law in the last four years and the evidence before the Court developed after certification, the Court concludes both classes should be decertified.

## II. RELEVANT FACTS

Plaintiffs have established these facts for class certification purposes:[5]

1.     Plaintiffs filed this adversary proceeding February 19, 2007, and filed their First Amended Class Action Complaint on October 1, 2007, doc. 19 (the "Amended Complaint").

2.     On October 15, 2008, the Court[6] certified the following classes:

Class 1 shall consist of the Rule 23(b)(2) class that seeks injunctive and declaratory relief. It shall consist of all persons that, since January 1, 1997, have received a discharge under Title 11 of the United States Bankruptcy Code from the United States Bankruptcy Court for the District of New Mexico, that scheduled First Light Federal Credit Union or Fort Bliss Federal Credit Union (its predecessor) as a creditor on his or her bankruptcy schedules or who, in fact, owed a debt to either First Light Federal Credit Union or Fort Bliss Federal Credit Union on the date they filed their bankruptcy petition, whether they listed First Light Federal Credit Union or Fort Bliss Federal Credit Union on their bankruptcy schedules or not.

Class 2 shall consist of the Rule 23(b)(3) class that seeks actual and/or punitive damages in addition to the relief sought by Class 1. It shall consist of all persons that, since January 1, 1997, have received a discharge under Title 11 of the United States Bankruptcy Code from the United States Bankruptcy Court for the District of New Mexico, that scheduled First Light Federal Credit Union or Fort Bliss Federal Credit Union (its predecessor) as a creditor on his or her bankruptcy schedules or who, in fact, owed a debt to either First Light Federal Credit Union or Fort Bliss Federal Credit Union on the date they filed their bankruptcy petition, whether they listed First Light Federal Credit Union or Fort Bliss Federal Credit Union on their bankruptcy schedules or not, and, who claims he or she was damaged by an alleged incorrect reporting to the national credit reporting agencies of the status of their debt or was induced by either credit union to repay a dischargeable or discharged debt in exchange for correction of the credit reporting information.

Certification Order, pp. 2-3.

---

[5]   Given the burden placed on Plaintiffs to show that the class action requirements have been met (discussed in Section IV below), the Court is not required to resolve factual disputes in Plaintiffs' favor, but must instead weigh the evidence and determine whether Plaintiffs have carried their burden.

[6]   Hon. James S. Starzynski, now retired.

3. The class claims are based solely on Defendant's alleged improprieties in post-discharge credit reporting. Amended Complaint, ¶¶ 39(b), 40, 49-55.

4. The Class 1 members seek a declaratory judgment that Defendant's conduct violated their discharge injunction, and seek to enjoin further violations.

5. The Class 2 members seek compensatory and punitive damages.

6. Class 1 has about 1,600 members.[7]

7. The size and make-up of Class 2 is unknown.[8] Plaintiffs were required to identify the members of Class 2 by July 31, 2009. *See* Stipulated Order Regarding Means and Timetable to Provide Adequate Notice to Classes, p. 3, entered March 26, 2009, doc. 57. No such identification has ever been made.

8. As much as 80% of the time, Defendant did not update its reporting to credit reporting agencies to indicate that a Member's debt to Defendant had been discharged in bankruptcy, and continued to report the discharged debt as past due.[9]

9. Plaintiffs' concerns about Defendant's credit reporting practices were brought to Defendant's attention in 2003 or 2004, but Defendant did not change its policies until after Plaintiffs brought this adversary proceeding.[10]

The following facts presented by Defendant are relevant to the Motion and are not substantially disputed by Plaintiffs:

---

[7] Response, p. 10. A member of either class is referred to as a "Member."
[8] To be a member of Class 2, one must qualify as a Class 1 member and also *claim* to have been damaged by Defendant's credit reporting practices, or *claim* to have been induced to pay a discharged debt in exchange for Defendant's agreement to correct the credit reporting. Certification Order, pp. 2-3 (emphasis added).
[9] See Response, p. 3; Defendant's Memorandum in Support of Motion for Summary Judgment, filed October 1, 2010, doc. 104, p. 13, alleged fact 35.
[10] Response, p. 3.

10. For bankruptcy cases filed after January 1, 2005, only four Members paid Defendant a portion of their discharged, unreaffirmed debts.[11]

11. There is no evidence about Member payments of discharged debts for bankruptcy cases filed between January 1, 1997 and January 1, 2005, because Defendant's records for that period are not stored on computer. Defendant estimates it would cost about $25,000 to $30,000 to review the pre-2005 "hard copy" files.[12] To date, neither party has spent the money necessary to conduce the review.

12. Defendant suggested that another way for Plaintiffs to determine how many Members paid discharged, un-reaffirmed debts for bankruptcy cases filed before January 1, 2005 would be for Plaintiffs to send a questionnaire to the Members.[13] Plaintiffs did not do so.[14]

A disputed fact is how Defendant responded when Members asked Defendant to change its credit reporting to include their bankruptcy discharge. Plaintiffs contend Defendant would not amend its report when asked to do so. Response, p. 3. Defendant disagrees, and cites "an abundance of evidence in the record that shows that [Defendant] did not refuse to update credit reports." Reply, p. 4. The Court treats this issue as disputed and unresolved.

III.    CLASS CERTIFICATION/DECERTIFICATION IS WITHIN THE DISCRETION OF THE TRIAL COURT

Class certification issues, including those relating to adequacy of class representation, are

---

[11] Defendant's Omnibus Brief in Response to Plaintiffs' Motion for Leave to File Second Amended Complaint, and in Reply to Plaintiffs' Response to Motion for Entry of Order Regarding Defendant's Objection to Discovery Request and Motion for Protective Order, filed March 3, 2011, doc. 122 (the "Omnibus Brief"), p. 4; Motion, pp. 1 and 6; Response, p. 11. There were a total of 42 Members who paid post-discharge debts to Defendant, but 38 of them owed either secured or reaffirmed debts. Omnibus Brief, p. 4 and Ex. B.

[12] Response, p. 11.

[13] Omnibus Brief, p. 7.

[14] The suggested inquiry is relevant to whether Defendant violated the discharge injunction, but would not help identifying the members of Class 2, since payment alone is not enough for membership. Rather, the debtor must claim that the payment was induced by Defendant's promise to change its credit reporting.

-4-

within the province of the trial court. *Rector v. City and County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003), citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999).

Trial courts are permitted to re-examine class certification at any time. Rule 23(c)(1)(C). *See also Rector v. Denver*, 348 F.3d at 949 (remanding to district court after *sua sponte* de-certifying the class based on lack of class representatives' standing); *Barnes v. Am. Tobacco*, 161 F.3d 127, 140 (3d Cir. 1998) ("district courts are required to reassess their class rulings as the case develops"); *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts").

"In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 43 (W.D.N.Y. 2009), citing *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008).

A class must be decertified if the reasons for granting certification "no longer exist or never existed." *Monaco v. Stone*, 187 F.R.D. 50, 59 (E.D.N.Y. 1999).

In *In re Motor Fuel Temperature Sales Practices Litigation*, 279 F.R.D. 598, 601 (D. Kan. 2012), the district court stated:

> Prior to final judgment, the Court has discretion under Rule 23(c)(1)(C) to decertify the class altogether, or to alter or amend its certification order. Fed.R.Civ.P. 23(c)(1)(C); *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1201 (10th Cir. 2010). Indeed, a class certification order is "inherently tentative," particularly before notice is sent to potential class members. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982). To determine whether decertification or other alteration or amendment of its certification order is appropriate, the Court applies the rubric for class certification in Rule 23.

Case 07-01026-t    Doc 169    Filed 03/21/13    Entered 03/21/13 10:38:22 Page 5 of 25

279 F.R.D. at 601. Thus, whether or not Class 1 and/or Class 2 were properly certified in October, 2008 (and such certification could may well have been appropriate), the Court has the obligation to revisit class certification if necessary.

Here, it is appropriate to revisit class certification for three reasons. First, the law on class actions has changed since October, 2008.[15] Second, the Tenth Circuit law on the "objective standard" for determining whether certain actions violate the discharge injunction has developed since class certification.[16] Third, the parties have conducted substantial post-certification discovery, and the Court now has the benefit of some of the discovery.[17] Because of the major changes in the law and the available evidence, it is reasonable to review class certification.

IV.   IN REVIEWING CLASS CERTIFICATION, THE COURT IS REQUIRED TO "PROBE BEHIND THE PLEADINGS"

When ruling on the propriety of class certification, the trial court is required do more than accept plaintiffs' allegations. The discussion of this issue in *Wal-Mart*, 131 S. Ct. at 2551-52, is instructive:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S. Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S. Ct. 2364; see *id.*, at 160, 102 S. Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's

---

[15] In particular, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) was decided in June, 2011.

[16] All briefing on the class certification issue had been completed before *Paul v. Inglehart* (*In re Paul*), 534 F.3d 1303 (10th Cir. 2008) was decided. The *Paul* decision is not cited in any of the briefing, nor in Judge Starzynski's memorandum opinion on class certification.

[17] All of the depositions submitted by the parties in this case were taken after class certification. It appears from the docket that all written discovery took place after class certification.

-6-

underlying claim. That cannot be helped." '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Falcon*, supra, at 160, 102 S. Ct. 2364 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978); some internal quotation marks omitted) [footnote omitted]. Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.,* jurisdiction and venue, is a familiar feature of litigation. See *Szabo v. Bridgport Machines, Inc.,* 249 F.3d 672, 676-677 (C.A.7 2001) (Easterbrook, J.).

See also *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) (quoting *Gen. Tel. Co. of Southwest v Falcon*, 457 U.S. 147 (1982), the Tenth Circuit held that the trial court is "not limited to the pleadings but may 'probe behind the pleadings' and examine the facts and evidence in the case").

The party seeking class certification "must affirmatively demonstrate his compliance with [Rule 23]," *Wal-Mart,* 131 S. Ct. 2541, and bears a "strict burden of proof" that "all of the requirements of [Rule] 23(a) are clearly met." *Tabor v. Hilti*, 703 F.3d at 1228, quoting *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 435 (10th Cir. 1978).

In *Epps v. JPMorgan Chase Bank N.A.*, 2012 WL 5250538, at *7 (D. Md. 2012), the district court stated:

> In the wake of the Supreme Court's opinion in *Wal–Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) parties seeking class certification face a heavy burden. Specifically, the party "must affirmatively demonstrate his compliance with the Rule-that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (emphasis in original).

See also *Souter v. Equifax Information Services, LLC*, 2012 WL 5992207, at *5 (4th Cir. 2012) (*Wal-Mart* requires a "rigorous analysis" before certifying a class action); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citing *Wal-Mart*, the Fifth Circuit stated that the "Named Plaintiffs, as the parties seeking certification, bear the burden of proof to

-7-

establish that the proposed class satisfies the requirements of Rule 23"); *Midland Pizza, LLC v. Southwestern Bell Telephone Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011) (citing *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004), the court stated that it must conduct a "rigorous analysis," and that plaintiff bears the burden of proof).

In conducting the review, the Court must keep in mind that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 131 S. Ct. at 2550, citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

The Court gave the parties an opportunity to supplement the evidence in support of their positions. *See* Order Denying Plaintiffs' Motion to Reconsider Protective Order, entered March 7, 2013, doc. 167, p. 8. Neither party elected to do so.

## V. RULE 23(a) REQUIREMENTS

A class may be certified only if all of the following Rule 23(a) requirements are met: (1) "numerosity;" (2) "commonality;" (3) "typicality;" and (4) "adequacy of representation." *Treviso v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006). The class must also be properly defined. *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977).

A.    Class Definition.    As a prerequisite to class certification, the class must be adequately defined. *See Rochford,* 565 F.2d at 977 (7th Cir. 1977) (recognizing a "definiteness" requirement implied by Rule 23(a)). There can be no class action if the proposed class is "amorphous" or "imprecise." 5 James W. Moore et al., Moore's Federal Practice § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997). *See also Owner Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 2001 WL 34366624, at *5 (S.D. Ohio 2001) ("Where named plaintiffs fail to define the class adequately, the court need not proceed to a full analysis under Rule 23");

*Metcalf v. Edelman,* 64 F.R.D. 407, 409 (N.D. Ill. 1974) ("the inability to define concisely a proper class to bring this action precludes plaintiff from fulfilling all the requirements of Rule 23"); *Givens v. Van Devere, Inc.,* 2012 WL 4092803, at *16 (N.D. Ohio 2012) (magistrate court recommends denial of class certification because, inter alia, class definition is inadequate).

A proper definition includes the requirement that the class not include members who have no claim against the defendant. *See Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 580 (N.D. Ill. 2005), *affirmed,* 472 F.3d 506 (7th Cir. 2006), citing *Guillory v. American Tobacco Co.,* 2001 WL 290603 (N.D. Ill. 2001) ("the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf").

B.    Numerosity (Rule 23(a)(1)).  Discussing the numerosity requirement, the Tenth Circuit stated:

> In order to meet this element, "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Housing Auth.,* 545 F.2d 1270, 1273 (10th Cir. 1976).  Here, the district court concluded that, although the number of putative class members-eighty-four-was not insignificant, it was not such an overwhelmingly large number as to be prohibitive of joinder. Nor was there any problem locating the remaining individuals for joinder since all the names and addresses of potential plaintiffs had been provided during discovery.
>
> The plaintiffs argue that the district court should have followed cases from other jurisdictions which hold numerosity may be presumed at a certain number. *See Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (presuming numerosity at forty members); *see also Polich v. Burlington Northern, Inc.,* 116 F.R.D. 258, 261 (D. Mont. 1987) (finding sixty potential members sufficient to support a presumption that joinder was not practicable). Our circuit has never adopted such a presumption.  To the contrary, we have specifically stated there is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir. 1978). Indeed, because it is such a fact-specific inquiry, we grant wide latitude to the district court in making this determination. *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1498 (10th Cir. 1992). Here, the district court carefully reviewed the record and made an appropriate judgment call. We therefore find no abuse of discretion.

-9-

*Treviso v. Adams*, 455 F.3d at 1162. *See also Roberts v. Target Corp.*, 2012 WL 2357420, at *3 (W.D. Okla. 2012) ("While plaintiff does not need to allege numerosity with mathematical precision, she does need to allege *some* facts that support the claim") (emphasis in original).

C.     Commonality (Rule 23(a)(2)).     *Wal-Mart* sets the standard for determining whether a proposed class satisfies the "commonality" requirement of Rule 23(a)(2):

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *Falcon, supra,* at 157, 102 S. Ct. 2364. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Nagareda, *supra,* at 132.

131 S. Ct. at 2551. *See also Stukenberg v. Perry,* 675 F.3d at 839 (reversing class certification ruling, the Fifth Circuit held that, while the district court's Rule 23(a)(2) commonality "analysis may have been a reasonable application of pre–*Wal–Mart* precedent, the *Wal–Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2), rendering the district court's analysis insufficient"); *Luiken v. Domino's Pizza, LLC,* 2013 WL 399248, at *5 (8th Cir. 2013) (reversing class certification ruling, the Eighth Circuit held that, in light of *Wal-Mart,* the

district court erred in finding that the claims were capable of class-wide resolution by ruling on a common contention).

D.   Typicality (Rule 23(a)(3)). Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The recent Fourth Circuit case of *Soutter v. Equifax Information Servs., LLC,* 2012 WL 5992207, at *4 (4th Cir. 2012), analyzes the "typicality" requirement:

> Typicality "goes to the heart of a representative['s] ability to represent a class." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006). Thus, Soutter's "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members." *Id.* Typicality "tend[s] to merge" with commonality, insofar as both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13 (1982). Thus, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter,* 436 F.3d at 466 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir. 1998)). While Soutter's claim need not be "perfectly identical" to the claims of the class she seeks to represent, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of action." *Id.* at 467.

2012 WL 5992207, *4. *See also Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) ("the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class").

E.   Adequacy of Representation (Rule 23(a)(4)). Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." As stated in *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.,* 2012 WL 1378531, at *5 (D. Colo. 2012):

> The Tenth Circuit has held that adequacy of representation depends on resolution of two questions. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). These questions are: "'(1) do the named plaintiffs and their

-11-

counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* at 1187–88 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)).

## VI.    RULE 23(b) REQUIREMENTS

If the trial court concludes that the requirements of Rule 23(a) are satisfied, the court may certify a class only if it also finds the movant has satisfied the conditions of Rule 23(b) (1), (2), or (3). *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009), citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

A.    Risk of Inconsistent Rulings/Claim Preclusion (Rule 23(b)(1)).    Plaintiffs have never sought class certification under Rule 23(b)(1), so no discussion of this subsection is needed.

B.    Injunctive Relief (Rule 23(b)(2)).    Class 1 is certified under Rule 23(b)(2). *Wal-Mart* makes clear that the relief available in a Rule 23(b)(2) class action is limited to injunctive and declaratory relief; monetary damages cannot be recovered unless incidental thereto. *Wal-Mart*, 131 S. Ct. at 2557:

> Our opinion in *Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 121, 114 S. Ct. 1359, 128 L.Ed.2d 33 (1994) *(per curiam)* expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.

C.    Money Damages (Rule 23(b)(3)).    Class 2 is certified under Rule 23(b)(3).

> To qualify for class certification under rule 23(b)(3), a class must satisfy the following two conditions in addition to the Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

*Coleman v. ReconTrust Co., N.A.,* 2012 WL 1302567, at *5 (D. Utah 2012). "The predominance criterion of Rule 23(b)(3) is 'far more demanding' than the Rule 23(a) commonality

-12-

requirement." *In re Bank of America Wage and Hour Employment Litigation*, __ F.R.D. ___, 2012 WL 4463285, at *4 (D. Kan. 2012), quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997).

> The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S. Ct. 2231. Generally, the predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issue subject only to individualized proof." *In re American Int'l Group, Inc. Sec. Lit.,* 689 F.3d 229, 240 (2d Cir. 2012). Rule 23(b)(3) requires the judge to "make findings about predominance and superiority" before allowing the class. *Wal-Mart,* 131 S. Ct. at 2559.

*Id*.

Common questions may not predominate if individualized proof of injury is required. *See Midland Pizza, LLC v. Southwestern Bell Telephone Co.*, 277 F.R.D. at 641-42 (class certification not appropriate because, inter alia, no common proof is possible to demonstrate injury for all class members, so individualized damage proof issues predominate over common issues); *Stern v. Cingular Wireless Corp.*, 2009 WL 481657, at *5 (C.D. Cal. 2009) (to the same effect); *Brown v. SBC Comm'ns, Inc.*, 2009 WL 260770, at *3 (S.D. Ill. 2009) (same). *See also DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 Fed. Appx. 762, 765 (11th Cir. 2012), quoting *Klay v. Humana,* 382 F.3d 1241, 1255 (11th Cir. 2004) (class certification not appropriate if class members must "introduce a great deal of individualized proof or argue a number of individualized legal points to establish most of all of the elements of their individual claims").

VII.   CURRENT LAW ON § 524(a)(2) AND CREDIT REPORTING

A.   The Tenth Circuit's "Objective Standard" For Facially Permissible Activities That Might Nevertheless Violate the Discharge Injunction.   Section 524(a)(2) provides that a

bankruptcy discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

The "such debt" is a reference to the language in § 524(a)(1) about "any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title . . . ."

Certain actions are facially impermissible and are plainly prohibited by § 524(a)(2), including dunning letters, collection calls, and collection actions. Further, in the Tenth Circuit some actions that are "facially permissible" can nevertheless violate the discharge injunction if the effect of the actions is to coerce payment of discharged debts. In such cases, the test whether the action violates the discharge injunction is set out in *In re Paul*, 534 F.3d at 1308:

> The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required. *In re Pratt,* 462 F.3d at 19; *In re Schlichtmann,* 375 B.R. at 95. By the same token, the presence of some other procedural impropriety or error in connection with the creditor's action will not give rise to a violation of the discharge injunction if the objective effect is not to coerce payment of a discharged debt.

*See also Mahoney v. Washington Mutual (In re Mahoney)*, 368 B.R. 579, 589 (Bankr. W.D. Tex. 2007) (articulating his version of the "objective" standard, Judge Leif Clark held that "for any act to count as an act that violates the discharge, there must be evidence of an effective connection between the conduct of the creditor and the collection of the debt.").

In *Paul*, the Tenth Circuit reversed the bankruptcy court's imposition of sanctions against creditor Tammy Inglehart, imposed for alleged violations of the discharge injunction. Ms. Inglehart had sought discovery from the debtors in a state court action against a corporation debtors were associated with. The discovery was sought after the debtors filed bankruptcy and obtained a discharge, and the debtors claimed that the discovery requests violated the discharge

-14-

injunction. The bankruptcy court agreed, and sanctioned Ms. Inglehart. The district court affirmed. The Tenth Circuit reversed, holding that pursuing discovery in support of claims against non-debtor parties was legitimate on its face, and could be considered a violation of the discharge injunction only if there was evidence that the objective effect of the discovery was to coerce payment of a discharged debt. 534 F.3d at 1309. The Tenth Circuit held:

> In sum, Ms. Iglehart pursued discovery from the Pauls relating to claims that did not concern their pre-petition liabilities. As such, her conduct did not violate any prohibition in § 524(a)(2). Clearly it imposed incidental burdens, as discovery does on anyone. But, notwithstanding the "fresh start" gloss on the statute, discharged debtors are not broadly free from any inconvenience and expense that otherwise permissible litigation may impose on them. Their special protection has been delimited by Congress in § 524(a)(2), and a creditor cannot be sanctioned for conduct that does not fall within its terms. *Of course, conduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, i.e., if it really serves to pressure the debtor to pay a discharged debt.* The bankruptcy court made no such finding here; indeed, the record would not have supported such a finding.

534 F.3d at 1312-13 (emphasis added). *See also In re Williams*, 438 B.R. 679, 694 (10th Cir. BAP 2010) (citing and following *Paul*); *Ammons v. Eddy Federal Credit Union (In re Ammons)*, 2012 WL 1252621, *8 (Bankr. D.N.M. 2012) (citing *Paul*). *See generally In re Pratt,* 462 F.3d 14, 19 (1st Cir. 2006) (refusal to either repossess collateral or release lien was "objectively coercive" and violated discharge injunction); *Parraway v. Andrews Univ. (In re Parraway),* 50 B.R. 316, 319 (W.D. Mich. 1984) (university's policy of withholding transcripts until students paid their debts violated discharge injunction).

      B.   <u>Credit Reporting and the Discharge Injunction</u>. Many cases have held that a creditor's failure to update reported information to reflect a bankruptcy discharge by itself is not an "act" within the meaning of § 524(a)(2),[18] and therefore does not violate the discharge

---

[18]   § 524(a)(2) states that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

injection.  *See In re Vogt*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000); *In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005); *In re Small*, 2011 WL 1868839, at *8 (Bankr. E.D. Ky. 2011); *In re Mahoney*, 368 B.R. at 584; *Davis v. Farm Bureau Bank, FSB*, 2008 WL 1924247, at *2 (W.D. Tex. 2008); *In re Miller*, 2003 WL 25273851, at *2 (Bankr. D. Id. 2003); *In re Mogg*, 2007 WL 2608501, at *4 (Bankr. S.D. Ill. 2007); *In re Bruno*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006).

Most of these cases also point out that continued reporting of a discharged debt as "due" is accurate, since the discharge injunction does not eradicate the debt, but only prevents the creditor from collecting it.  *See, e.g., In re Vogt*, 257 B.R. at 70 (discharge does not wipe away the debt, it only serves to eliminate the debtor's personal responsibility to pay the debt); *In re Irby*, 337 B.R. at 295 (upon discharge, it is only a debtor's personal obligation to pay the debt that is effectively extinguished; the debt itself remains); *In re Mahoney*, 368 B.R. at 584 (bankruptcy does not erase debt; the discharge is only an injunction against attempts to collect the debt as a personal liability of the debtor).

Other courts have held that the failure to update credit information, if willful, could violate the discharge injunction.  *See e.g. In re McKenzie-Gilyard*, 388 B.R. 474, 481-82 (Bankr. E.D.N.Y. 2007); *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).  These cases use a "subjective" standard for determining whether a facially permissible activity (credit reporting) violated the discharge injunction.  The Tenth Circuit chose the objective standard instead, and looks at the results of a creditor's activity, rather than the creditor's intent or state of mind.

The Court finds that credit reporting of the sort complained of in this adversary proceeding, if it qualifies as an "act," is facially permissible and does not constitute a *per se* violation of § 524(a)(2).  Under *Paul*, the credit reporting nevertheless could be found to violate

the discharge injunction "if its objective effect is prohibited, i.e., if it really serves to pressure the debtor to pay a discharged debt." 534 F.3d at 1313.

      C.    <u>Damages</u>.  As noted in a prior decision, Plaintiffs do not have a private right of action arising from Defendant's alleged violation of the discharge injunction.  Memorandum Opinion, entered November 2, 2012, doc 151, p. 4.  Instead, Plaintiffs' remedy is an order finding Defendant in contempt of court for violating the injunction.  Id.

      In their Amended Complaint, Plaintiffs seek a contempt order and ask for actual damages as a result of the contumacious conduct.  Amended Complaint, p. 14.  There is no question that the Court has the ability to grant such relief as part of its power to enter civil contempt orders. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001); *Paul*, 534 F.3d at 1306; *In re Ammons*, 2012 WL 1252621, at *7.  *See generally Law v. National Collegiate Athletic Assoc.,* 134 F.3d 1438, 1442 (10th Cir. 1998).  Civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law,* 134 F.3d at 1442, citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187 (1949).

      It is less clear whether this Court has the authority to award punitive damages for a willful violation of the discharge injunction.  *See e.g. Cox v. Zale*, 239 F.3d at 916-17 (questioning the bankruptcy court's criminal contempt powers).  The Court need not decide the issue.

      Plaintiffs' request for actual damages requires proof of actual injury.  *Ammons*, 2012 WL 1252621, at *7; *see also In re Martin,* 474 B.R. 789, at *5 (6th Cir. BAP 2012) (debtor cannot rely on undue conjecture or speculation, but instead must support its claim of actual injury with adequate proof); *In re Hart*, 246 B.R. 709, 739-40 (Bankr. D. Mass. 2000), citing *Lugo v. de*

-17-

*Jesus Saez (In re de Jesus Saez)*, 721 F.2d 848 (1st Cir. 1983) (civil contempt proceedings are limited to redressing actual injury of those harmed by the contemnor's conduct).

The Court also has the power to enjoin further violations of the discharge injunction. *See* 11 U.S.C. § 105(a); *Paul*, 534 F.2d at 1306 ("Under 11 U.S.C. § 105(a), bankruptcy court have the equitable power to enforce and remedy violations of the substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)").

## VIII.   DISCUSSION

A.   <u>Class 1</u>.   Class 1 includes all New Mexico debtors who were granted a discharge after January 1, 1997 and who owed money to Defendant pre-petition. Certification Order, p. 2. Class 1 members seek injunctive and declaratory relief premised on Defendant's alleged post-discharge credit misreporting. Certification Order, p. 3.

(i)   <u>Class Definition</u>.   The main problem with Class 1 is that the definition appears to include many Members who do not have claims against Defendant. Class 1 Members seek a declaration that Defendant violated their discharge injunction, and an injunction prohibiting further violations. To proceed as a class action, Plaintiffs must provide some evidence that Defendant did in fact violate the Class 1 members' discharge injunctions.

Here, the only substantially evidence is that, in about 80% of the cases,[19] Defendant did not report a Member's bankruptcy discharge to credit reporting agencies, but continued to report their debt as past due. As discussed above, this alleged credit reporting practice is not a *per se* violation of § 524(a)(2). To prove that the practice violated the Class 1 Members' discharge injunctions, Plaintiff would have to show that the "objective effect" of the credit reporting is prohibited, because it "really serve[d] to pressure the debtor to pay a discharged debt." *Paul,* 534 F.3d at 1313.

---

[19]   See Fact 8, above.

At this point, the only evidence available to the Court is that Defendant's class-wide credit reporting practice did *not* have the objective effect of pressuring Members to pay discharged debts. On the contrary, the available evidence shows that Defendant collected almost no discharged debts from Members.[20] Per *Wal-Mart's* heightened requirements for "probing behind the pleadings," Plaintiffs have the burden of coming forward with significant evidence that Defendant's class-wide conduct violated the discharge injunction under the *Paul* standard. They have not done so.

Furthermore, there are reasons to believe that many Class 1 members do not have claims against the Defendant for violating their discharge injunction. These Members likely include those:

- who did not pay any discharged, unsecured, un-reaffirmed debt;
- with secured and/or reaffirmed debts;
- who were never aware that Defendant was reporting their discharged debts as still due;[21]
- whose debts were properly reported by Defendant (perhaps about 20% of the class); and/or
- who complained to Defendant about how their debt was being reported, in response to which Defendant changed its reporting.

It seems likely, based on the current evidence, that many more Class 1 Members have no claims against Defendant than have claims. The inclusion of a substantial percentage of Members who have no claim is grounds to decertify the class. *See J.B. ex rel. Hart. v. Valdez*, 186 F.3d 1280, 1290 (10th Cir. 1999) (class certification inappropriate when some class members clearly have no claim); *Romberio v. Unumprovident Corp.*, 385 Fed. Appx. 423, 431 (6th Cir. 2009) (class action inappropriate when certain class members have no claim at all); *Pueblo of Zuni v. U.S.,* 243 F.R.D. 436, 443 (D.N.M. 2007) (class certification denied because, inter alia,

---

[20] Four of 1600 members paid discharged, unsecured, non-reaffirmed debts in bankruptcy cases filed after January 1, 2005.

[21] It would be difficult or impossible to show coercion if the Members were unaware of Defendant's acts.

class definition included members with no claim against the defendant); *Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 604 (D. Colo. 1990) (class certification denied because the proposed class could easily contain many who sustained no injury); *Rogers v. NationsCredit Financial Services Corp.*, 2000 WL 1499354, at *3-4 (N.D. Cal. 2000) (certification denied where a substantial portion of proposed class members would not have a claim). *See also In re Refrigerant Compressors Antitrust Litigation,* 2011 WL 2623317, at *2 (E.D. Mich. 2011) (denying request to certify class because the proposed definition would contain members who had no claim and therefore lacked standing); *Lanson Development Co., v. City of Dearborn,* 2011 WL 1561065 (E.D. Mich. 2011) (denying proposed class certification because the class definition "appears to encompass individuals who have no . . . claim at all").

The definition of Class 1 likely seemed reasonable in 2008, before *Paul* was decided and the Court had the benefit of the evidence now available. Because it now appears that most Class 1 members have no claim against Defendant, continued certification of the class would be improper.

> (ii)    <u>Commonality</u>. Rule 23(a)(2) commonality is also a problem. Plaintiffs must show that "there are questions of law or fact common to the class." Rule 23(a)(2). Under *Wal-Mart,* furthermore, a finding of the truth or falsity of an alleged common question must "resolve an issue that is central to the validity of each of the claims in one stroke." 131 S. Ct. at 2551.

The current record indicates that almost all Members would have to put on individualized evidence of coercion to show Defendant violated their discharge injunction. The need for such individualized proof means that there are not significant "questions of law or fact common to the class," as required by *Wal-Mart*.

In the typical post-*Wal-Mart* class action, proof that the defendant took a particular class-wide action concludes the liability portion of the case. *See, e.g. In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) (class action appropriate where the activity complained of was charging fees in violation of Bankruptcy Rule 2016(a)); *Mazzei v. Money Store*, 2012 WL 6622706 (S.D.N.Y. 2012) (certifying class action for breach of contract and other wrongs, alleging that a lender improperly charged certain fees in contravention of form loan agreements). *Cf. In re Gilliland*, 474 B.R. 482, 496 (Bankr. N.D. Miss. 2012) (denying class certification because the facts concerning creditor's alleged violation of the discharge injunction varied widely between putative class members, and the case therefore was not a "one size fits all cause of action.").

Here, the only reasonably substantiated evidence of Defendant's class-wide actions is not enough to prove that Defendant violated all Members' discharge injunctions. As far as the Court can tell from the current record, Plaintiffs would need to prove at trial, on a Member-by-Member basis, that the Defendant's other actions had an actual coercive effect on the Member to pressure payment of a discharged debt. The class claims therefore lack commonality as defined by *Wal-Mart*.

(iii)    Other Requirements. The Court does not know how many of the 1600 Class 1 Members might have individualized evidence that Defendant violated their discharge injunction. It could be a very small minority. This brings into question whether Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1). In addition, there is no evidence the named Plaintiffs are typical of the class Members who might be able to show proof of a discharge injunction violation. Neither Plaintiff paid a discharged debt, so it could be that they have no claim against Defendant. If not, they could not satisfy the typicality requirement. *See Epps v. JPMorgan Chase*, 2012 WL 5250538, at 2 ("[Plaintiff's] claims cannot be 'typical'

-21-

within the meaning of Rule 23(a)(3) if she does not have a claim herself). Furthermore, the record indicates substantial variation in Defendant's interaction with different Members, so Plaintiffs' interactions likely differed from those of the other Members.[22] Thus, Plaintiffs have not shown that they satisfy the "typicality" requirement of Rule 23(a)(3).[23]

In sum, at this stage of the case, Plaintiffs have not made the required showing, under the "rigorous analysis" required post-*Wal-Mart,* that Class 1 is properly defined and satisfies Rule 23(a)'s commonality, numerosity, or typicality requirements.[24]

(iv)    Mootness.  Apart from the problems discussed above, there is a substantial mootness problem with the requested injunctive relief.  It is undisputed Defendant has changed its credit reporting policies in a way that addresses Plaintiff's concerns.  Motion, p. 11; Response, p. 18.  The Court finds it very unlikely that Defendant would revert to its former policies, regardless of the outcome of this litigation.  Given that, the Class 1 claim may be moot.

B.    Class 2.  Class 2 includes all New Mexico debtors who were granted a discharge after January 1, 1997, who owed money to Defendant pre-petition, and who claim that they were damaged by Defendant's credit reporting practices, or else claim they were induced to pay a discharged debt in exchange to Defendant changing its credit reporting.  Certification Order, pp. 2-3.  Class 2 members seek money damages, including punitive damages.  Order Certifying

---

[22]    The probable differences include (i) whether the Member's debt to Defendant was reported by Defendant as discharged; (ii) whether the Member ever discovered any such reporting; (iii) whether the Member ever asked Defendant to change its reporting; (iv) if so, whether Defendant did so; (v) which of Defendant's employee(s) the Member talked to, when, how many times, etc.; (vi) whether any collections letters or telephone calls were received from Defendant, post-discharge about the discharged debt; (vii) whether the Member ever paid any portion of the discharged debt; and (viii) whether the Member ever tried to borrow money, post-discharge, and if so whether Defendant's reporting of the Member's discharged debt had any effect on such borrowing.  There is no indication in the evidence of uniformity in the answers to any of these questions, thus making this case, like *Gilliland,* not a "one size fits all" cause of action.

[23]    The inclusion of class members with no claim also raises doubts about typicality. *See Rogers v. NationsCredit,* 2000 WL 1499354, at p. 4 (typicality requirement not met when some class members have no claim).

[24]    The Court has no concerns about the adequacy of the representation given by Plaintiff's counsel.

Class, p. 3.

(i)    <u>Predominance</u>.  Class 2 does not withstand the scrutiny required by *Wal-Mart*.  Class 2 has the same Rule 23(a) problems as Class 1.  In addition, since proof of actual damages is required in civil contempt proceedings like this one, the damages evidence would be different for each Member.  The discussion of this issue in *Lester v. Percudani*, 217 F.R.D. 345 (M.D. Pa. 2003) is instructive:

> In this case, the injuries alleged are economic in nature and consist of the increased mortgage payments and fees that class members must pay allegedly as a result of the inflated home appraisals, the low tax assessments provided before closing, and the incorrect estimated monthly mortgage payments provided before and at closing.  Thus, the very fact of injury, apart from the amount of damages, depends almost entirely on individual circumstances [. . . .] The issue of damages, a prerequisite of claims under both RICO and the Pennsylvania UTPCPL, presents the court with the prospect of holding hundreds or thousands of individual hearings.

345 F.R.D. at 352.  The *Lester* court denied class certification because of the individualized damages evidence.  Here, as in *Lester*, to show and quantify actual injury each Member would have to introduce his or her own proof.[25]  *Cf. In re Brannan,* 2013 WL 85158, at *12 (Bankr. S.D. Ala. 2013) (certifying a Rule 23(b)(3) class after finding that the damages claimed by class members would not be individualized).  Because of this, and because individualized proof of violation of the discharge injunction also would be required in most cases, the Court cannot find that common questions of law or fact predominate over questions affecting only individual Members, nor that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Rule 23(b)(3).

(ii)    <u>Commonality and Numerosity</u>.  Another significant problem with Class 2 is that its members have never been identified.  Class 2 members consist of Class 1 members

---

[25] E.g., payment, increased difficulty in obtaining credit, higher borrowing costs, loss of employment or promotion, and the like.

who either *claim* to have been damaged by Defendant's credit reporting practices, or else *claim* they were induced by Defendant to repay discharged debt. Certification Order, p. 2 (emphasis added). So far, four Class 1 members have been identified as having paid discharged debt (although the reasons for the payment are unknown, and no effort has been made to determine in the members make the required claims). To the Court's knowledge, the only Class 1 members who claim to have been damaged are Plaintiffs. Thus, currently there are *may be* six identified Class 2 members. Plaintiffs were supposed to identify all Class 2 members by July 31, 2009, but never did so.

In a recent status conference held in this adversary proceeding, Plaintiffs' counsel stated he did not want to send a questionnaire to the Class 1 members because the Members would "not understand" the survey and would not want to "go back and re-live" anything related to their bankruptcy. Status Conference held March 4, 2013, doc. 166 (recording at 11:00-11:20). Without such a polling of potential Class 2 members, however, the Court does not see how the class members could ever be identified, nor how Plaintiffs could ever satisfy the commonality and numerosity requirements of Rule 23(a)(1) and (a)(2). At this late point in the proceeding, it is not acceptable to have such a vaguely defined class, with such an apparently tiny membership. For this reason also, the Court cannot make the required finding required for continued certification of Class 2.

IX.    CONCLUSION

The Court is not ruling on the merits of Plaintiffs' claims against Defendant, nor on the merits of the claims of any other class member. Rather, the ruling is limited to whether the classes should remain certified, given the facts presented to the Court, the current case law on class actions, and the standards in the Tenth Circuit for determining whether facially permissible

-24-

activities violate the discharge injunction. The evidence before the Court is that the current classes are not properly defined and do not satisfy the requirements of Rule 23. Furthermore, it seems clear that a class action trial would be unworkable from the Plaintiffs' (and the Court's) perspective because, inter alia, individualized proof would be required for both the alleged violation of the discharge injunction, and for damages.

The Motion will be granted. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate order will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: March 21, 2013.

Copies to:

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004-1479

Kelly Albers
650 Montana Ave., Ste. D
Las Cruces, NM 88001-4294

Dennis E. Jontz
201 Third St., NW, Suite 1950
Albuquerque, NM 87102