UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RALPH MONTANO and
ELSIE M. MONTANO,

        Debtors.

Case No. 7-04-17866-TL

RALPH MONTANO and
ELSIE M. MONTANO, et al.,

        Plaintiffs,

v.        Adv. No. 07-1026

FIRST LIGHT FEDERAL CREDIT UNION,

        Defendant.

## MEMORANDUM OPINION

By their Motion For Relief from Order Decertifying Classes Entered on March 21, 2013 (the "Motion"), Plaintiffs ask the Court to reconsider its Order Decertifying Classes (the "Decertification Order"). Defendant responded to the Motion April 29, 2013 (the "Response"). For the reasons set forth below, the Court finds that the Motion is not well taken and should be denied.

### I.    BACKGROUND

Plaintiffs filed this adversary proceeding on February 19, 2007, and filed their First Amended Class Action Complaint on October 1, 2007, doc. 19 (the "Amended Complaint").

On October 15, 2008, the Court[1] entered an order (the "Certification Order") certifying the following classes:

---

[1] Hon. James S. Starzynski, now retired.

Class 1 shall consist of the Rule 23(b)(2) class that seeks injunctive and declaratory relief. It shall consist of all persons that, since January 1, 1997, have received a discharge under Title 11 of the United States Bankruptcy Code from the United States Bankruptcy Court for the District of New Mexico, that scheduled First Light Federal Credit Union or Fort Bliss Federal Credit Union (its predecessor) as a creditor on his or her bankruptcy schedules or who, in fact, owed a debt to either First Light Federal Credit Union or Fort Bliss Federal Credit Union on the date they filed their bankruptcy petition, whether they listed First Light Federal Credit Union or Fort Bliss Federal Credit Union on their bankruptcy schedules or not.

Class 2 shall consist of the Rule 23(b)(3) class that seeks actual and/or punitive damages in addition to the relief sought by Class 1. It shall consist of all persons that, since January 1, 1997, have received a discharge under Title 11 of the United States Bankruptcy Code from the United States Bankruptcy Court for the District of New Mexico, that scheduled First Light Federal Credit Union or Fort Bliss Federal Credit Union (its predecessor) as a creditor on his or her bankruptcy schedules or who, in fact, owed a debt to either First Light Federal Credit Union or Fort Bliss Federal Credit Union on the date they filed their bankruptcy petition, whether they listed First Light Federal Credit Union or Fort Bliss Federal Credit Union on their bankruptcy schedules or not, and, who claims he or she was damaged by an alleged incorrect reporting to the national credit reporting agencies of the status of their debt or was induced by either credit union to repay a dischargeable or discharged debt in exchange for correction of the credit reporting information.

The Class 1 members seek to enjoin further alleged violations of the discharge injunction, while the Class 2 members seek money damages.

On December 21, 2012, Defendant filed a Motion to Decertify Class Actions, doc. 161 (the "Decertification Motion"). The matter was fully briefed, and on March 21, 2013 the Court entered a Memorandum Opinion and the Decertification Order. The Motion followed.

The Motion is based on Fed.R.Civ.P. 60(b)(1)[2] and advances the following arguments in support of Plaintiffs' request for relief:

1. The Court held that the size and make-up of Class 2 is unknown, while in fact the plaintiffs identified the class members as the same members as Class 1 (Motion, p. 2);

2. The Court stated that Plaintiffs' counsel said he did not want to send a questionnaire to the Class 1 members because they would 'not understand' the survey and would not want to 'go back and re-live' anything related to their bankruptcy. This statement is false and misleading (Motion, p. 4);

3. The Court bases its opinion on the incorrect fact that "As much as 80% of the time, Defendant did not update its reporting to credit reporting agencies to indicate that a Member's debt to Defendant has been discharged in bankruptcy, and continued to report the discharged debt as past due" (Motion, p. 4);

4. The Court bases its opinion on many other disputed factual findings (Motion, p. 5);

5. The Court's ruling that "credit reporting of the sort complained of in this adversary proceeding, if it qualifies as an "act," is facially permissible and does not constitute a *per se* violation of § 524(a)(2)" is improper for purposes of determining class certification issues (Motion, p. 5); and

6. The Court, construing *In re Paul,* 534 F.3d 1301 (10th Cir. 2008), incorrectly concluded that only Plaintiffs who literally paid the debt can be damaged and therefore a member of either Class (Motion, p. 5).

## II. Rule 60(b) Motions

"[R]elief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Rogers v. Andrus Transp. Servs*., 502 F.3d 1147, 1153 (10th Cir. 2007) (quoting *Allender v. Raytheon Aircraft Co*., 439 F.3d 1236, 1242 (10th Cir. 2006)). *See also Yapp v. Excel Corp.,* 186 F.3d 1222, 1231 (10th Cir. 1999) (to the same

---

[2] "[T]he court may relieve a party . . .from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect. . . ." Fed.R.Civ.P. 60(b) applies in adversary proceedings. Bankruptcy Rule 9024.

-3-

effect). "Rule 60(b) relief is not available to allow a party merely to reargue issues previously addressed to the court." *Allender*, 439 F.3d at 1242. In the Motion, Plaintiffs for the most part reargue matters the Court has already addressed. Thus, summary denial of the Motion under Rule 60(b) could be appropriate, Because this proceeding is somewhat unusual (it may be the only class action ever filed in the New Mexico bankruptcy court, it has been pending for more than six years, and it is now on its second judge), however, the Court will address Plaintiffs' arguments.

### III. Identification of Class 2

Plaintiffs object to the Court's finding that the Class 2 members have not been identified. Motion, p. 2. Plaintiffs argue that they identified the Class 2 claimants

> in many hearings that were held. The Class Action was an "opt out" case. If the Class 1 members did not want to participate as Class 2 claimants, they were required to "opt out." Only one such individual opted out and this was made known to the Court in many various proceedings. However, all parties and the Court were on notice that the case was proceeding and the Class 2 claimants were substantially the same as the Class 1 claimants with the one exception.

Motion, p. 2. It may be true that Plaintiffs stated in "many various hearings" that only one Class 1 member "opted out" of being a Class 2 member, and/or that Class 2 consisted of the same members as Class 1.[3] If so, the statements appear to have been made in error. The definition of Class 2 in the Certification Order, and the form of notice approved by the Court and Plaintiffs,[4] require more than inactivity to turn a Class 1 member into a Class 2 member. The agreed-upon notice states:

1.  If you meet the "Class 1" definition above, you

---

[3] The docket does not reflect any filing that identifies the members of Class 2. It seems to the Court that the Stipulated Order Regarding Means and Timetable to Provide Adequate Notice to Classes, entered March 26, 2009, doc. 57 (the "Stipulated Order") may have required that the members would be identified in a writing filed in the adversary proceeding.

[4] The form of notice is attached to the Stipulated Order as Exhibit 1.

-4-

automatically qualify for participation as a Class 1 member. Individuals who only are members of Class 1 do not need to take any action to be included in the lawsuit, and may not request to be excluded from the class. If the Court grants the requested injunctive and/or declaratory relief, Class 1 members may benefit indirectly if the court orders that First Light terminate the alleged wrongful credit reporting practices described above. Class 1 members are not, however, entitled to receive any economic or monetary distribution in any potential settlement or judgment.

    2.    Certain members of Class 1 may also qualify as members of Class 2. Class 2 members may be eligible to receive a monetary benefit if the court grants plaintiffs' requested relief. If you meet the Class 1 definition *and also claim that you have been (a) damaged by First Light's alleged incorrect reporting practices OR (b) induced by First Fight to repay a debt to First Light that was dischargeable or discharged in exchange for correction of credit reporting information*, you are also a member of Class 2.

*If* you are a member of Class 2, you have a decision to make:

    A.    DO NOTHING. Stay in the lawsuit. Await the outcome. Give up certain rights, Let Plaintiffs' attorney represent your rights. By doing nothing, you keep the possibility of getting money or benefits from the case; but you also will be bound by the outcome and rulings in the case and will give up any rights to sue First Light separately about the same legal claims in this lawsuit.

OR

    B.    ASK TO BE EXCLUDED. Get out of the lawsuit. Get no benefits from it. Keep rights. Hire your own attorney to represent your right if you think you are entitled to receive some money from Defendant. By asking to be excluded, you will not receive any money or benefits from the case, but you will not be bound by the outcome and rulings in the case. To ask to be excluded, you must fill out, sign, and send in the "Exclusion Request" form that is provided with this Notice. In order for any Exclusion request to be effective, it must be postmarked not later than June 30, 2009

    3.    *If you are not sure whether you are included in Class 2*, you can get free help by calling or writing the lawyers representing plaintiffs in this case.

(italics added). The quoted language and the definition of Class 2 in the Certification

-5-

Order make it very clear that a Class 1 member does not become a class 2 member simply by "doing nothing." Rather, to be a class 2 member a debtor must:

    1.    Be a class 1 member;

    2.    Claim to have been damaged by Defendant's credit reporting practices; and

    3.    Decline to "opt out."

Based upon the Motion and the remainder of the record in this proceeding, it is clear that Plaintiffs derived the identity of the purported Class 2 members by using steps 1 and 3 above, ignoring step 2. That is contrary to the Court's orders. Just because a debtor is a Class 1 member and did not "opt out" does not mean that the debtor claims to have been damaged by Defendant's credit reporting practices. In other words, a debtor cannot "opt out" of participating as a class 2 member without first qualifying for Class 2 membership, and a debtor cannot be a Class 2 member unless she claims Defendant damaged her. The missing step of determining which Class 1 members claim to have been damaged has never been completed, although this proceeding is more than six years old.

Furthermore, even if Plaintiffs were right that all Class 1 members automatically became Class 2 members simply by failing to "opt out," the essential problems identified in the Memorandum Opinion would remain, i.e., nobody knows which of the class members actually claim to have been damaged, and nobody knows what damages they claim. Even under Plaintiffs' theory of class membership, hundreds of Class 2 members do not have claims against Defendant, because their discharge was properly reported. Hundreds more likely would admit, *if asked*, that they assert no damages claims against

Defendant. Continued certification of Class 2 with so many members who have no claim is improper. *See, e.g., Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 580 (N.D. Ill. 2005), *affirmed,* 472 F.3d 506 (7th Cir. 2006) (citing *Guillory v. American Tobacco Co.,* 2001 WL 290603 (N.D. Ill. 2001), the district court stated that "the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf").

### IV.  Questionnaire to Class 1 Members

Plaintiffs' next argue:

> The Court states that, "In a recent status conference held in this adversary proceeding, Plaintiff's counsel stated he did not want to send a questionnaire to the Class 1 members because the Members would 'not understand' the survey and would not want to 'go back and re-live' anything related to their bankruptcy." See, Order, Page 24. This statement is taken completely out of context as to what was said by Plaintiffs' counsel. As a result, it is false and misleading.

Motion, p. 4. At a March 4, 2013 status conference, the following exchange took place:

> THE COURT: Mr. Arvizu, what was your thinking about the proposal to surveying [sic] the 1600 New Mexico members about whether they paid as an alternative to looking through the files?
>
> MR. ARVIZU: I did oppose it when it was originally suggested, but Judge Starzynski was the one who ultimately struck down that proposal. And I agree with his reasoning; in that, I don't want to send something to these particular debtors and, you know, half of them get thrown in the mail right off the bat. Second thing is, you know, people -- this was so long ago at this point that they're not going to understand, you know, what we're even talking about. You know, bankruptcy is something they have in the furthest, you know, corner of their mind at this point and they don't want to go back and relive anything in regards to this.

Transcript, March 4, 2013 hearing, p. 8, (attached as an exhibit to Defendant's Response). In light of the foregoing question and answer, the Court's statement that Plaintiffs' counsel did not want to send a questionnaire to the Class 1 members because

-7-

they would "not understand" the survey and would not want to "go back and re-live" anything, Memorandum Opinion, p. 24, seems fair.  The Court has never gotten the impression that Plaintiffs have any interest in asking the alleged Class 2 members whether they claim to have been damaged, and if so by how much.  Given the definition of Class 2, the Court does not see any other way of prosecuting the Class 2 claims, and Plaintiffs' reluctance to pose the most basic questions to potential class members gives the Court pause.

V. Defendant's Rate of Credit Report Updating

Plaintiffs next take issue with the Court's using the following fact in its analysis of class certification:

> As much as 80% of the time, Defendant did not update its reporting to credit reporting agencies to indicate that a Members' debt to Defendant had been discharged in bankruptcy, and continued to report the discharged debt as past due.

Motion, p. 4, citing Memorandum Opinion, p. 3.  Instead, Plaintiffs argue that "incorrect reporting was happening 'in a minimum' of 80% of the cases."  Motion, p. 5.  The Court's finding was based on Plaintiffs' Memorandum Brief in Support of Plaintiffs' Motion for Partial Summary Judgment, filed October 1, 2010, doc. 104, p. 12, ¶¶ 28 and 29, in which Plaintiffs assert as undisputed that, according to Defendant's employee Martha Angelica Loya, "research on all New Mexico and Texas totaling over 1,000 cases going back as far as 2005 indicated that on 80% of the cases, no discharge was being reflected on credit reports," and also that "[o]n the list of Identified Class Members going back to 1997, Ms. Loya states that the research conducted by Defendant again indicated that on 80% of those cases no discharge information was reflected on the credit reports."

The Court is not aware of any evidence submitted by Plaintiffs that contradicts

these alleged undisputed facts. If Plaintiffs are unhappy that the Court used the term "as much as 80% of the time" rather than "80% of the time," the result would have been the same regardless of how the 80% figure was characterized. The point the Court was making was that, if 20% (or about 20%, or up to 20%) of the Class 1 members had their discharge properly reported, then Class 1 contains about 320 people who don't have claims. As shown by the case law cited above and in the Memorandum Opinion, that is impermissible.

## VI. Other Disputed Facts

A. <u>Basis of Class Claims</u>. Plaintiffs dispute that "The class claims are based solely on Defendant's alleged improprieties in post-discharge credit reporting." Motion, p. 5. The Court made this finding by reviewing Plaintiff's Amended Complaint, filed October 1, 2007, doc. 19, and particularly by reviewing ¶¶ 38, 40, and 45-55 thereof. The Court concludes that its finding is fair based on the allegations in the Amended Complaint. Furthermore, Plaintiffs' argument that they complained not only of Defendant's credit reporting, but also of Defendant's "collection practices," lacks force, because the only "collection practices" mentioned in the Amended Complaint relate to credit reporting. In any event, the argument does not convince the Court that class certification remains appropriate. If Plaintiffs have complaints about Defendant's "collection practices" apart from the alleged class-wide credit reporting practice, there is no indication whatever, and no allegation, that such collection practices were class-wide. The only class-wide practice complained of is credit reporting. Further, if the actions that give rise to liability are individualized (collection practices) rather than class-wide (credit reporting), class certification would not be permitted.

B. <u>Facts About How Many Members Paid Discharged Debts</u>. The Court noted the evidence that "for bankruptcy cases filed after January 1, 2005, only four Members paid Defendant a portion of their discharged, unreaffirmed debts." Memorandum Opinion, p. 4. Plaintiffs dispute this fact, Motion, p. 5, but point to no evidence in the record that contradicts it. Plaintiffs also dispute the Court's finding about the status of evidence about payment of discharged debts for cases filed before January 1, 2005, but again point to no contrary evidence in the record. As shown in the Memorandum Opinion, class action plaintiffs have an affirmative duty to demonstrate that class certification is warranted, and the Court is required to "probe behind the pleadings." *See e.g., Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551-52 (2011). The best evidence available to the Court is set forth above, and if Plaintiffs did not think the evidence was accurate or complete, *Wal-Mart* required more than simply "disputing" it, while insisting on continued class certification.

VII. <u>Whether Defendant's Credit Reporting Constituted a per Se Violation of § 524(a)(2)</u>

The Court concluded that "the credit reporting of the sort complained of in this adversary proceeding, if it qualifies as an "act," is facially permissible and does not constitute a *per se* violation of § 524(a)(2)." Memorandum Opinion, p. 16. Plaintiffs argue that this is an inappropriate ruling on the merits before trial. Motion, p. 5. This argument is meritless. The only class-wide conduct Plaintiffs have ever alleged is Defendant's failure (80% of the time), to report discharged debts to the credit reporting agencies. All other alleged conduct is more or less individualized, not class-wide. The Court reviewed the case law on the credit reporting issue and determined that the alleged credit reporting practice, if true, is facially permissible and not a *per se* violation of the

-10-

discharge injunction. While Plaintiffs apparently think the Court should have waited until after trial to make that determination, the Court disagrees, for two reasons. First, the ruling is largely a legal one, and can be made appropriately before trial. Second, *Wal-Mart* requires the Court to make such inquiries during the course of litigation, as and when needed. The ruling was required now because Plaintiffs must show that class-wide evidence could establish liability. Here, the only alleged class-wide evidence would not.

### VIII. Construction of *In re Paul*

Finally, Plaintiffs argue that the Court construed *In re Paul*, 534 F.3d 1303 (10th Cir. 2008), incorrectly to hold that "only Plaintiffs who literally paid the debt can be damaged and therefore a member of either Class." Motion, p. 5. That is incorrect. The Court's interpretation of *Paul* and other case law only concerned whether Defendant's failure to report discharged debts to the credit reporting agencies was a *per se* violation of the discharge injunction. The Court concluded that such an alleged credit reporting practice was facially permissible, but could nevertheless violate the discharge injunction if "its objective effect is prohibited, i.e. if it really serves to pressure the debtor to pay a discharged debt." Memorandum Opinion, p. 17, quoting *Paul,* 534 F.3d 1313. The Court then reviewed the evidence before it, and concluded that such an objective effect had not been shown (and indeed, the only evidence before the Court was that Defendant's actions did not result in payment). Plaintiffs were encouraged to submit class-wide evidence of payment, pressure, and/or other coercion that might have satisfied *Paul's* objective standard, but they did not do so. The key point here is not the lack of evidence (although the evidence is weak), but the lack of *class-wide* evidence. Given that the alleged credit reporting practice is not, by itself, sufficient to establish a violation of the
-11-

discharge injunction, the apparent lack of other class-wide evidence was fatal to Class 2's continued class certification.

        IX.     Proof of Damages and the Supreme Court's *Comcast* Decision

Less than a week after the Court entered the Decertification Order, the Supreme Court handed down *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013). In *Comcast,* the Supreme Court addressed, inter alia, whether class certification was proper under Rule 23(b)(3) when plaintiffs had not shown that damages could be measured on a class-wide basis. The Supreme Court concluded that class certification was not appropriate absent such a demonstration. 133 S. Ct. at 1433. In so ruling, the Supreme Court rejected the lower court's conclusion that they should not inquire into the methodology of plaintiffs' damages calculation at the class certification stage, but should instead wait until trial.

> The District Court and the Court of Appeals saw no need for respondents to "tie each theory of antitrust impact" to a calculation of damages. 655 F.3d, at 206. That, they said, would involve consideration of the "merits" having "no place in the class certification inquiry." *Id.,* at 206–207. That reasoning flatly contradicts our cases requiring a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim. *Wal–Mart, supra,* at ——, and n. 6, 131 S. Ct., at 2551–2552, and n. 6. The Court of Appeals simply concluded that respondents "provided a method to measure and quantify damages on a classwide basis," finding it unnecessary to decide "whether the methodology [was] a just and reasonable inference or speculative." 655 F.3d, at 206. Under that logic, at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity.

133 S. Ct. at 1433.

*Comcast* bolsters the Court's decision to decertify Class 2, because there is no evidence before the Court that if Class 2 prevailed in its claims against Defendant, the damages they suffered would be susceptible of class-wide measurement. Rather, it seems

Case 07-01026-t    Doc 173    Filed 05/21/13    Entered 05/21/13 09:18:17 Page 12 of 14

clear that any such damages would be individualized, especially given the evidence that payment of the discharged debt likely would not be an element of damages in more than a few cases. If in fact Class 2 damages could be measured class-wide, Plaintiffs had an obligation to come forward with evidence thereof. They did not, and *Comcast* does not allow them the luxury of waiting until trial.

## X. CONCLUSION

The Court's decision to decertify both classes in this proceeding, and to deny the Motion, should not be taken for indifference to the discharge injunction. The bankruptcy discharge, which is the *raison d'etre* of most consumer cases, would be rendered meaningless without the discharge injunction. If a violation of the discharge injunction is shown, the Court will compensate the debtor appropriately and/or sanction the creditor.

Furthermore, the Court is not ruling that Defendant never violated the discharge injunction protecting any Class 1 or Class 2 member. Rather, the Court has reviewed as best it can the claims and evidence before it, and has evaluated whether, under *Wal-Mart, Comcast, Paul,* etc., Plaintiffs' claims against Defendant continue to qualify for class certification. The Court concludes that they do not because, inter alia, of the following:

> Class 1 is not properly defined and does not meet the requirements of Fed.R.Civ.P. 23(a)(1), (2), and/or (3); and

> Class 2 is not properly defined and does not meet the requirements of Fed.R.Civ.P. 23(a)(1)(2), and/or (3), or Fed.R.Civ.P. 23(b)(3).

The Court therefore concludes that Plaintiff's Motion should denied. A separate order will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: May 21, 2013.

Copies to:

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004-1479

Kelly Albers
650 Montana Ave., Ste. D
Las Cruces, NM 88001-4294

Dennis E. Jontz
201 Third St., NW, Suite 1950
Albuquerque, NM 87102